I call 2-09-075-4, people v. Reginald Kennebrew, arguing that the death of Peter Thomas is Mark Ryan, and arguing that the death of the athlete is Scott Jacobson. Please be seated. Are you both ready to proceed? Yes, you may proceed when you're ready. Excuse me. May it please the court, counsel, I'm Mark Ryan, counsel for Reginald Kennebrew. I'd like to sort of begin with a housekeeping matter. Subsequent to my filing my reply brief, in this case, the Illinois Supreme Court decided the case of people v. Kitsch, which I think pretty much destroys the second argument. I concede that there is nothing left of it. While I believe that there can be still cases where a child is called to the stand, but doesn't testify specific to Kroffert, such as Werner or Rolandus G., that's not my case. So I'm going to concentrate on the first argument. Excuse me, I'm sorry about this. In this case, basically, the contention argument was the state failed to prove the anatomical element of count one, which is predatory criminal sexual assault. Specifically, or not specifically, that was the problem, is that the proof was not sufficiently specific as to that. As charged and as instructed, the state chose to instruct on the definition of sexual penetration as any intrusion, however slight, between the sex organ of the defendant and into the anus of the victim. That's the way the charging document read also? Actually, the charging document, I believe, just said generally active sexual penetration for penis and anus, but the state chose at trial to use that definition. I'm guessing that was trial strategy because they already had to prove intrusion for the other count, which involved a finger, and that, by statute, had to have an intrusion. So they probably just didn't want to confuse the jury by having two different definitions of sexual penetration. At any rate, the key thing here is the state was never, or the child, D.C., was never asked by the state or the child advocate to differentiate, essentially, her anus from the rest of her buttocks. Whether by that, by using the word anus, or any other description, the child used the word butt or bottom interchangeably. When she was asked what that means, she said that's the part of the body a person sits on. When they gave her a gingerbread diagram of a boy or a girl, she circled the entire buttock area, and the diagram did not itself have an incident or anything that differentiated the anal cavity from the buttocks. She made prior statements to her stepmother about my client rubbing his thing, meaning his penis, across or up and down her bottom. Then there was one statement in the DVD of the interview with the child advocate where she said, when she asked him, when you touched his thing, did your butt, was it inside or outside, she said, inside. And in context, because butt means everything, it means buttocks, all this does is demonstrate that there was contact between the defense penis and her buttocks. Your position is that Oliver controls this? Yes, more or less, although, yes, it is, in a nutshell. Although I will say that in one aspect this case is even better than Oliver because when I re-read Oliver, Oliver said that the state's proof there wasn't sufficient even to prove contact. And in my case, the state, because it really was instructed, had to prove intrusion. But yes. We distinguished Oliver recently in Atherton. Yes. How is the case different from Atherton? Oh, Atherton is distinguishable in, actually, and I brought Atherton up here, in several things. First of all, as I noticed when this court, and I did not point this out in my reply brief, and I'm glad you asked me that, Your Honor. The state must prove actual contact between the defendant's sex organ and the sex organ or anus of the complainant. And this court also gave the full definition of sexual penetration, any intrusion or any contact between the particular parts of anatomy that are required. And so, there, they only had to prove contact. Here, they had to prove intrusion. There, the child gave, the child also was very specific about, there was the part where she poops and she described her anus, basically. She gave inconsistent statements about whether or not it went inside her anus, and that was a matter of credibility for the jury. Here, the question is specificity. Also, I would note, in this court's decision, when asked again, the victim was questioned, you said the defendant's private didn't go inside that part, but did it touch that part at all? And the victim responded, yes. Regardless of the credibility war, whether or not, which statement of hers you believed, whether it went inside the young girl's, poor girl's anus, was, whether there was any contact. And that would have satisfied it in Atherton, and that's not present here because of the way the case went to the jury. How do you read the statement of the victim in this case that, you know, when asked how did it feel, she said, not good. Does that put this in an area of pain or discomfort based upon penetration? I don't think so, because it's not specific. There are many, many ways something can feel not good, and she could just, you know, very realistically have just found the entire thing icky, that he was touching her with his penis anywhere. And that would not go, and I think, you know, and I think more telling me is the absence of anal trauma or any symptoms, which, like I said, are not required. But I think if there had been anal trauma the way there was vaginal trauma in this case, there would be, that would be proof of intrusion, because you don't, I mean, you know, there's no rule that says it has to all be by testimony. It can also be by physical evidence. Here, the lack of trauma doesn't make up for the lack of specificity. And who's convicted of a number of counts?  Two other counts, and one was another criminal sexual assault, the other one was a criminal sexual abuse, aggravated criminal sexual abuse, and you're not arguing those two counts? That is correct. My arguments, yes, the child made similar statements as to the other predatory criminal sexual count, however, there was evidence of trauma to her vagina that sort of, you know, puts a lid on any argument that no rational prior fact could have found. And I'm also not making an argument as to the aggravated criminal sexual abuse count. This only goes to my client's conviction on count one and his sentence on that one count. But yes, in a nutshell, and actually I would note that this court's opinion in Averton, when it describes Oliver, it cites Oliver for the proposition that evidence that the defendant's sex organ only touched an area near the complainant's sex organ is, or anus, is insufficient to establish an element of penetration. And that's what we have here. Here, unlike the complaining in Oliver, Ariana did testify that the defendant's penis went inside her anus. And here, just like Oliver, you have basically a general statement by an unsophisticated complainant to in my butt, in this case, and there's no differentiation between the buttocks and the anus. And that's the difference in the offense, because the definition requires actual contact with the anus, and in this case, the verdict also required intrusion into the anus. I think that is generally what I wanted to say. Does anyone have any questions, any further questions?  Do you wish to argue? Do you wish to argue? See you when you're ready. Morning, Your Honors. May it please the Court. I guess, since we're only talking about the first issue, the contention that I would like to address by the defendant is that this case is virtually identical or indistinguishable from Oliver. That simply isn't the case. It's not because in Oliver the charge there was deviant sexual assault, which didn't require an act of penetration or intrusion at the time. It's that Oliver was a case decided in 1976. Additionally, in Oliver, the age of the victim is completely different. While we don't know the specific age of the victim like we do in Hilliard, the other case upon which the defendant relies there, the victim was 15 years old. In Oliver, the victim has, the only reference to her age, the only thing I could glean as far as her age is that she's married and has a husband. Deviant sexual assault was carried out while the husband was tied up and the wife, there were deviant sexual acts performed on her. I would assume that that would mean that she's at least 18 years old. And we, as defense counsel pointed out in his reply brief, we of course treat the testimony of somebody in their teens a lot differently than we treat the testimony of a 7, 8 or 9 year old. There still has to be evidence though. I'm sorry? There still has to be evidence in the record. Well, absolutely. I think, I mean, it's not, it's not so much a game of semantics. It's that, you know, while the child did not testify, DC in this case did not testify specifically regarding an act of animal intrusion. There is her statement from the victim sensitive interview that was, you know, considered to be reliable at the 1-15-10 hearing. Her statements were relevant to this issue. You know, the forensic interviewer, Marisol Tishman, asked whether or not the defendant had ever touched inside of her butt. This was after they were having the conversation about where DC was placed on the bed and what specifically was occurring to her. Tishman asked, did the defendant ever touch, I'm sorry, did Reggie ever touch inside of her butt? DC initially shook her head no and then said, wait, yeah. In response, then DC said that he would use his thing to do it. When asked what specifically she meant by thing, DC pointed to the gingerbread drawing, which is People's Exhibit No. 2, and circled on the, I'm sorry, People's Exhibit No. 3, the gingerbread drawing of a boy. She circled the area regarding his penis. When asked about how it would feel, I'm sorry, when asked about it, again, in reference to the drawing, she said that his thing, meaning the defendant, would touch her on the inside of her butt. Now, from this, the defendant says that the only reasonable interpretation of that is that the defendant didn't make an act of anal penetration. But DC goes on in the interview. She says it felt not good. A little bit later, talking about exactly where he was and what he was wearing at the time, DC says that while she was on her stomach and on the bed, the defendant wearing a T-shirt and underwear was on his knees. He would then pull it out of his underwear and, quote, just put it in there. I think that a reasonable jury, taking the evidence in the light most favorable to the prosecution, could easily interpret from that statement. He pulled it out of his underwear and just put it in there. From DC's other statement, that his thing would touch on the inside of her butt wasn't just necessarily limited to the act of touching her butt itself. It actually, I mean, specifically describes placing his penis inside of her. I believe any reasonable fact finder in this case would look at that same evidence and come up with the same conclusion. That's, to me, why Atherton, while there are other issues in that case, obviously, why Atherton is directly on point. There in Atherton, you have the child making almost the exact same statement. The child was very specific about, you know, touching where she pooped. Right. And here we have, instead of that, we have a circle of a drawing on this gingerbread person of the entire buttocks region. That's correct. There's a little bit of a difference between the entire butt and saying, in my butt, and saying, where I poop. I mean, that certainly is... Absolutely. But, again, taking the record in the light most favorable to the prosecution and reasonable inferences to be drawn from the record in its entirety. So, I'm not arguing, at least, about D.C.'s testimony on the stand. That clearly doesn't cover the issue. What I am saying is that her statements inside of the victim-sensitive interview do precisely describe this act. I mean, for her to say he just put it in there is a little bit different than saying, as she did before, she was able to distinguish that he brushed his penis, not brushed, but that he ran his penis across her buttcheeks. That's a little bit different than just saying, given the description, the physical description of where he is on the bed, the fact that he's down on his knees, that he would then pull out his penis and just put it in there, is entirely different than the statement that she gave earlier. I mean, I don't think this is a situation where the child didn't know or didn't understand the distinction between the two. I mean, for her to give that precise statement like that, that indicates to me a level of familiarity with the act that occurred. It's not that she wasn't able to distinguish between what he said before regarding buttcheeks or the actual insertion into her anus. That might be the situation in Oliver. And, of course, I think the Third District in its decision in Oliver, while I do take issues, you know, in a large part with how that case was decided, it's clear to me that the overall import of the Justice's decision in Oliver is that this is an older person who would be required, theoretically, if we're going to impose requirements on victims' testimonies, would understand the distinction between what she described as the earlier act of the defendant rubbing his penis along her buttcheeks or actually placing it inside of her anus. That, simply put, is the distinction. I mean, it's not just the age of the victims, it's the level of familiarity that would be expected. And like I said, in Oliver, while we don't know what precisely her age was, we know that she had a husband at the time. I would submit that there's a big distinction between what an 18-year-old or somebody who I'm presuming is going to be at least 18 years old would understand that they would understand the distinction between just the general area regarding the butt and the actual insertion. Now, while the Court in Oliver did call the victim unsophisticated, I mean, there's just simply put, there's a reasonable difference between relying on statements of a 7-year-old in this regard and relying on statements of somebody who's much older. And the same situation presents itself in Hilliard. Hilliard, you have a 15-year-old. While we're not talking necessarily about specific act of penetration, she does distinguish between the defendant, in that case, who rubbed her vagina, the outside area of her vagina, and then apparently went a little bit further, actually spread open parts of her labia and inserted his finger. That's a 15-year-old. But here we have a 7-year-old. It was 7 at least at the time of the victim-sensitive interview. And so I would submit to you that that is precisely the difference. The question is whether or not, you know, a reasonable fact-finder could rely on her statement that he placed it inside of her butt. To me, that, simply put, is sufficient proof for the crime. How do you reconcile her definition of butt as she circled it on the gingerbread man, gingerbread person? Right. Does she have a much larger place on her body than what is required under this charging document? Well, and again, you know, it's not just the charging document. It's also, I mean, the patent jury instruction. Right, but the question is how do you reconcile those two? I would reconcile them by saying, you know, it's not just what she drew on the gingerbread drawing. It's her statements at the time. And so while, you know, at the time she was describing that generally to be the butt, for her to say that he, given the position that she described, the defendant in her, put it in there, I don't think it's inconceivable that the defendant in the course of attempting or actually completing the active. Is that standard, whether it's inconceivable based on the evidence? No, no, what I'm saying, what I'm saying, Your Honor, is that he did both. Okay. Where in Oliver, for example, they used the victim's prior statement that the defendant had just brushed his penis along her buttcheeks. And they found that to be somewhat inconsistent with her testimony at trial. I think placing those two statements together the way the court did in Oliver is problematic, simply put. I mean, it doesn't seem unreasonable. It simply doesn't seem unreasonable. As this court surmised in Atherton, where there is admittedly a little bit more detail, but it doesn't seem unreasonable in the course of attempting to penetrate her anally or actually completing the act that he would rub his penis along her buttcheeks. So, I mean, I think in a sense, the child is describing both of those occurrences. But here specifically, in regards to the act of intrusion, I mean, her statement is, his thing would touch her on the inside of her butt. And then, you know, when this would occur, he would pull it out of his underwear and just put it in there. So, I mean, simply put, put it in there is insertion. I mean, whether or not the seven-year-old trial is sophisticated enough to understand that, I think her statement can reasonably be interpreted that way. Is there an obligation to ask further questions of a seven-year-old, eight-year-old victim? I'm sorry, you mean in the context of a victim-sensitive interview or while she's testifying? Either way. Is there an obligation? I mean, when she has defined an area that is substantially larger than what is required under the charging document and presumably with the, anticipating what the instructions are going to be, do you just sort of live or die with what you've got? I mean, should there have been additional questions asked? I think in every situation there could always, you know, I mean, no two lawyers would try the same case the same way. I don't think any forensic interviewer would, you know, two forensic interviewers would necessarily conduct an interview the same way. Sure, a clarifying question would have been helpful, but what I'm saying is that, regardless of whether or not an additional question would have been helpful, I mean, not just under the standard of review. You have her statement. It was placed inside. I don't, to be quite honest with you, it's not whether we can reasonably infer from that that she was able to distinguish between the two. She distinguished between the two. Any reason in the record why the state chose to place the additional burden on itself to prove penetration by intrusion as opposed to touching? Actually, if I can just pull... The IPI for this 11.65 on the definition of sexual penetration is for contact, it would be contact between the sex organ and the anus, strictly for contact, but for intrusion, simply put, you know, intrusion can cover several different things. I'm not certain that it's a charted stage. Any part of the body or any object? Well, no, I'm sorry. Well, intrusion is... Right, I'm sorry. Intrusion is any part of the body or an object into the sex organ or anus of another person. Why the state chose to do that, I can't give you an answer. I wasn't the trial attorney. Would I have done something differently? Possibly. But what I'm saying is that here it's kind of a non-event. I mean, as long as you have a statement that supports intrusion, it's not whether the jury can reasonably infer that an intrusion occurred. There's a statement that an intrusion occurred. Are there... Any other questions? Any other comments? Other than to say that the... No, I mean, other than to say that in Oliver, you know, we obviously have an older, in comparison, more sophisticated victim, even though the third district calls her unsophisticated, and then in Hilliard we have a 15-year-old and this child is seven years old, and while we might attribute any infirmities to a child, you know, testifying or giving statements regarding these matters, the record is clear. She made those statements in the victim-sensitive interview, and they are what prove count one of the indictment. So whether we chose to charge it another way, I mean, I can understand,  and to me it's that simple. Thank you, Your Honor. Thank you. Do you wish to offer a reply? Yes, Your Honor. I'd like to begin by... I actually have a copy of the Oliver opinion here. It's a First District case, and the defendant argued that the evidence was insufficient to prove that his penis touched the anus of the complainant. After a careful review of the testimony in the record, we are of the opinion that the direct examination of the complainant, complaining witness, shows that she was quite unknowledgeable as to the meaning of the terms used in the questions based upon the statute defining the offense. Counsel is correct in that it doesn't say the complaining witness's age. However, we have a girl who was seven at the time of the events and I believe maybe had just turned eight when she gave the statements, and that was nine at the time of trial. So we have an unsophisticated witness, whatever the age of the... And so we have that analogous. We both have a vague and undefined statement to in my butt or in there, you know. And then we have... We also have the same prior statement. I believe there it was along her cheeks was the statement in... was the testimony in Oliver. And here we have across. There's no difference factually. We have an unsophisticated witness who isn't asked to differentiate. And I would like to... And I would also point out that in Atherton, this court distinguished Oliver. It didn't disparage it. It didn't say, well, it came out in the 70s and it isn't good law anymore. This court distinguished it because the state actually put on specific contact evidence in Atherton. They actually tried to ask... You know, you don't have to say anything. You could say the place where you poop or where the poop comes out was more crudely the hole. There are a number of ways to describe it and there's no exact one that's required. But they made the effort. They did that. And then on top of that, of course, they submitted the full instruction presumably because they only had to prove contact. So regardless of whether it went inside or not, you said the defendant's private didn't go inside that part. But did it touch that part at all? Yes, it touched that part. Specifically that part asked about. The state didn't ask that here. The state is now saying, well, she also said put it in there. Where's there? There is the butt, the bottom. What's that? That's all of it. You can't take the words of a child and give them the context that an adult would understand. You have to use that child's context. There means butt or bottom. That means all of it. The state also mentioned that the child was presumably familiar. And I'd like to point out that we don't know. We're familiar with the anatomical thing. We don't know because she wasn't asked by anybody. It's not enough to show that something that should not have happened happened. You have to prove the elements of the offense. And the offense is very specific that it requires anal contact. And here, anal contact I don't even think has been shown, let alone any slight intrusion. And finally, again, the familiar case. Actually, I didn't bring that case up originally. That was one that was in the state's brief. And I had simply distinguished it as noting that unlike there, we had a 15-year-old. And it was the 15-year-old who used the word vagina who actually used the anatomical term rather than something slang like thing or Lucy or butt. And so when you have a 15-year-old who knows what a vagina is, using the word vagina and says the finger went inside, that's not a vagina. If there are no further questions, Your Honors. Thank you. Thank you very much. All right, we'll be in recess. Thank you both very much for your arguments.